IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WINDSOR COURT HOTEL PARTNERS, LLC | § | |
|      *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-2813 |
| | § | |
| | § | |
| ARCH SPECIALTY INSURANCE COMPANY and LANDMARK AMERICAN INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| | § | |
|     *Defendants.* | § | |
| | § | |
| v. | § | |
| | § | |
| WINDSOR COURT HOTEL PARTNERS, LLC, CROW FAMILY, INC., CROW HOLDINGS CAPITAL PARTNERS, LLC AND ANATOLE PARTNERS, III, LLC | § | |
| | § | |
| | § | |
| | § | |
| | § | |
|     *Counter-Defendants.* | § | |

## LANDMARK AMERICAN INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S SECOND AMENDED PETITION

Defendant Landmark American Insurance Company ("Landmark") files its Answer to Plaintiff Windsor Court Hotel Partners, LLC ("Plaintiff")'s Second Amended Petition ( "Petition") and, in support of its Answer, shows as follows:

## I.  DISCOVERY CONTROL PLAN

1.  Landmark denies the allegations in Paragraph 1 of the Petition because this case has been removed to the Northern District of Texas, Dallas Division. Accordingly, the Federal Rules of Civil Procedure apply in lieu of the Texas Rules of Civil Procedure.

2.      Landmark admits Plaintiff claims monetary relief over $1,000,000 but denies all remaining allegations in Paragraph 2 of the Petition.

## II.      **PARTIES**

3.      Landmark lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 3 of the Petition, but currently has no basis to deny the allegation that the members of Plaintiff are citizens of Texas and Louisiana whose principal place of business is in Louisiana. For the purposes of determining jurisdiction, Landmark admits the Parties are diverse and jurisdiction in the Northern District of Texas exist.

4.      Landmark lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 4 of the Petition, but currently has no basis to deny the allegation that Arch Specialty Insurance Company ("Arch") is organized in the state of Missouri with its principal place of business in New Jersey.

5.      Landmark admits the allegations contained in Paragraph 5 of the Petition.

## III.      **JURISDICTION AND VENUE**

6.      In response to Paragraph 6 of the Petition, Landmark re-alleges and incorporates by reference its responses.

7.      Landmark denies the allegations in Paragraph 7 of the Petition because this case has been removed to the Northern District of Texas, Dallas Division, which has jurisdiction over this lawsuit. Landmark denies Plaintiff's contention that Defendants may not remove this case because, as set forth in Arch's Notice of Removal (Dkt. No. 1): (1) Plaintiff and Defendants Arch and Landmark are citizens of different states; (2) the total amount in controversy exceeds $75,000, exclusive of interests and costs; (3) the Notice of Removal was filed within thirty (30) days after receipt of the amended pleading making this case removable (the Petition); and (4) despite the

lawsuit being filed more than one year ago, the one-year bar of § 1446(c)(1) does not bar removal because Plaintiff acted in bad faith to prevent removal of this action by improperly and prematurely filing suit against its excess insurance carriers to prevent removal. Landmark further incorporates by reference Paragraphs 21 through 26 of Arch's Notice of Removal (Dkt. No. 1).

8.　　In response to Paragraph 8 of the Petition, Landmark asserts venue is proper in Dallas County, but asserts venue is likewise proper in the federal district and division embracing Dallas County.

## IV.　　FACTUAL BACKGROUND

9.　　In response to Paragraph 9 of the Petition, Landmark re-alleges and incorporates by reference its responses above.

10.　　Landmark admits this is an insurance coverage dispute but denies all other allegations in Paragraph 10 of the Petition. Landmark further asserts the Landmark policy, Policy No. LHT918637, with effective dates of 6/1/2021 to 6/1/2022 (the "Landmark Policy"), has not been triggered, as Plaintiff has not fully exhausted the policy limits of the first-layer excess Arch Policy for a total of "$50,000,000" in "Primary Limits and Underlying Excess Limits."

### A. Hurricane Ida Allegedly Damaged the Windsor Court Hotel

11.　　Upon information and belief, Landmark admits the allegations in Paragraph 11 of the Petition.

12.　　Landmark admits Hurricane Ida made landfall in the New Orleans area in late August 2021 but denies the remaining allegations contained in Paragraph 12 of the Petition.

13.　　Landmark lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 13 of the Petition.

14.    Landmark admits on or about August 29, 2021, Hurricane Ida made landfall in the southeastern portion of Louisiana but denies the remaining allegations contained in Paragraph 14 of the Petition with respect to Hurricane Ida.

15.    Landmark lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 15 of the Petition.

16.    Landmark lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 15 of the Petition.

17.    Landmark denies all allegations in Paragraph 17 of the Petition.

18.    Landmark denies all allegations in Paragraph 18 of the Petition.

19.    Landmark denies all allegations in Paragraph 19 of the Petition.

20.    Landmark denies all allegations in Paragraph 20 of the Petition.

**B. The Policies Allegedly Cover the Windsor Court Hotel's Losses Caused by Hurricane Ida.**

21.    In response to Paragraph 21 of the Petition, Landmark admits Plaintiff is the named insured on the Landmark Policy issued to Plaintiff for the period from June 1, 2021 through June 1, 2022. Landmark further admits the Landmark Policy follows form to that of the Continental Casualty Company ("CNA Policy"). Landmark denies any remaining allegations in Paragraph 21 of the Petition.

22.    In response to Paragraph 22 of the Petition, Landmark admits a market of primary insurers issued commercial property policies to Plaintiff and other entities for the period from June 1, 2021 through June 1, 2022 which provided a total of $25 million in policy limits. Landmark further admits Arch issued an excess policy to Plaintiff with $25 million in policy limits in excess of the primary insurer policies for the period from June 1, 2021 through June 1, 2022. (the "Arch Policy"). Landmark finally admits it issued a top-layer excess insurance policy

to Plaintiff with $27 million in policy limits in excess of the $50 million limits of the primary insurer policies and the Arch Policy for the period from June 1, 2021 through June 1, 2022. Landmark denies all other allegations in Paragraph 22 of the Petition.

23.     Landmark denies the allegations in Paragraph 23 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

24.     In response to Paragraph 24 of the Petition, Landmark admits the Landmark Policy follows form to the CNA Policy. Landmark denies all remaining allegations in Paragraph 24 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

25.     In response to Paragraph 25 of the Petition, Landmark admits the Landmark Policy provides coverage for Business Interruption and Extra Expenses subject to certain terms, limitations, and conditions. Landmark denies all remaining allegations in Paragraph 25 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

26.     In response to Paragraph 26 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 26 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

27.     Landmark denies the allegations in Paragraph 27 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

28.     Landmark denies the allegations in Paragraph 28 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

29.     In response to Paragraph 29 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 26 of the Petition.

30.    In response to Paragraph 30 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 30 of the Petition.

31.    In response to Paragraph 31 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 31 of the Petition.

32.    Landmark denies the allegations in Paragraph 32 of the Petition.

33.    In response to Paragraph 33 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 33 of the Petition.

34.    Landmark denies the allegations in Paragraph 34 of the Petition.

35.    In response to Paragraph 35 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 35 of the Petition.

36.    Landmark denies the allegations in Paragraph 36 of the Petition.

37.    Landmark denies the allegations in Paragraph 37 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

38.    In response to Paragraph 38 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies the remaining allegations in Paragraph 38 of the Petition.

39.    Landmark denies the allegations in Paragraph 39 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

40.     In response to Paragraph 40 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies the remaining allegations in Paragraph 40 of the Petition.

41.     Landmark denies the allegations in Paragraph 41 of the Petition.

42.     Landmark denies the allegations in Paragraph 42 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

43.     In response to Paragraph 43 of the Petition, Landmark admits the quoted language appears in the CNA Policy to which the Landmark Policy follows form but denies all remaining allegations in Paragraph 43 of the Petition.

44.     In response to Paragraph 44 of the Petition, Landmark admits the Landmark Policy follows form to the CNA Policy but denies all remaining allegations in Paragraph 44 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

45.     In response to Paragraph 45 of the Petition, Landmark admits the Landmark Policy follows form to the CNA Policy but denies all remaining allegations in Paragraph 45 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

46.     In response to Paragraph 46 of the Petition, Landmark admits the Landmark Policy follows form to the CNA Policy. Landmark denies the remaining allegations in Paragraph 46 of the Petition because the Landmark Policy has not been triggered.

47.     Landmark denies the allegations in Paragraph 47 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

**C. The Claim and "Investigation."**

48.     Landmark denies the allegations in Paragraph 48 of the Petition.

49.    Landmark admits John Harris inspected the Windsor Court after Hurricane Ida, but denies the remaining allegations in Paragraph 49 of the Petition.

50.    Landmark admits Plaintiff submitted documentation to John Harris in June 2022 claiming between $34,227,698 and $38,788,798 in alleged damages but denies the remaining allegations in Paragraph 50 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

51.    Landmark denies the allegations in Paragraph 51 of the Petition.

52.    Landmark denies the allegations in Paragraph 52 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

53.    Landmark denies the allegations in Paragraph 53 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

54.    Landmark denies the allegations in Paragraph 54 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

55.    Landmark denies the allegations in Paragraph 55 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

56.    Landmark denies the allegations in Paragraph 56 of the Petition.

57.    Landmark denies the allegations in Paragraph 57 of the Petition.

58.    Landmark denies the allegations in Paragraph 58 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

59.    Landmark denies the allegations in Paragraph 59 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

60.    Landmark denies the allegations in Paragraph 60 of the Petition.

61.    Landmark denies the allegations in Paragraph 61 of the Petition.

62.     Landmark denies the allegations in Paragraph 62 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

63.     Landmark denies the allegations in Paragraph 63 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

64.     Landmark denies the allegations in Paragraph 64 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

65.     Plaintiff's assertions in Paragraph 65 of the Petition concerning Arch do not require a response from Landmark. To the extent that further response is required, Landmark denies all allegations in Paragraph 65.

66.     Landmark denies the allegations in Paragraph 66 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

67.     Landmark denies the allegations in Paragraph 67 of the Petition. Landmark further asserts the Landmark Policy has not been triggered.

## V.    CAUSES OF ACTION

### A.  Count One – Breach of Contract.

68.      In response to Paragraph 68 of the Petition, Landmark re-alleges and incorporates by reference its response above.

69.     In response to Paragraph 69 of the Petition, Landmark admits the Landmark Policy is a valid and enforceable policy. Landmark denies all remaining allegations in Paragraph 69 of the Petition.

70.     Landmark denies the allegations in Paragraph 70 of the Petition because the Landmark Policy is not triggered, and because Plaintiff has not actually incurred over $50,000,000 in covered damages.

71.     Landmark denies the allegations in Paragraph 71 of the Petition. Landmark specifically denies Plaintiff has satisfied all conditions precedent under its alleged causes of action against Landmark and to coverage under the Landmark Policy because Plaintiff undisputably has not fully exhausted the policy limits of the first-layer excess Arch Policy. The Landmark Policy specifically provides that Landmark's liability attaches "only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full of amount of their respective net loss liability as set forth in Item 6 of the Schedule and designated 'Primary and Underlying Excess Limit(s)…" The Primary and Underlying Excess Limits are accurately listed as "$50,000,000 per occurrence." Accordingly, unless and until Arch exhausts its $25,000,000 in policy limits for a total of "$50,000,000" in "Primary Limits and Underlying Excess Limits," the Landmark Policy is not triggered and Plaintiff has not satisfied its conditions precedent under its causes of action asserted in the Petition.

72.     Landmark denies the allegations in Paragraph 72 of the Petition. Landmark specifically denies the Landmark Policy has been triggered because Plaintiff undisputably has not fully exhausted the policy limits of the first-layer excess Arch Policy. The Landmark Policy specifically provides Landmark's liability attaches "only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full of amount of their respective net loss liability as set forth in Item 6 of the Schedule and designated 'Primary and Underlying Excess Limit(s)…" The Primary and Underlying Excess Limits are accurately listed as "$50,000,000 per occurrence." Accordingly, unless and until Arch exhausts its $25,000,000 in policy limits for a

total of "$50,000,000" in "Primary Limits and Underlying Excess Limits," the Landmark Policy is not triggered.

73.    Landmark denies the allegations in Paragraph 73 of the Petition. Landmark specifically denies that it breached the Landmark Policy because the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

74.    Landmark denies the allegations in Paragraph 74 of the Petition. Landmark specifically denies it breached the Landmark Policy because the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

75.    Landmark denies the allegations in Paragraph 75 of the Petition. Landmark specifically denies  it breached the Landmark Policy because the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

**B.  Count Two – Anticipatory Breach of Contract.**

76.    In response to Paragraph 76 of the Petition, Landmark re-alleges and incorporates by reference its response above.

77.    Landmark denies the allegations in Paragraph 77 of the Petition. Landmark specifically denies Plaintiff has shown that Landmark "will be triggered and will clearly and unambiguously obligate" Landmark to pay Plaintiff's remaining claim amounts because a significant portion of Plaintiff's alleged damages (upwards of $14.8 million of its alleged $52,416,459.48 in actual damages) are based on purely speculative costs that they undisputably have not already incurred and may never incur.

11

78.    Landmark denies the allegations in Paragraph 78 of the Petition. Landmark specifically denies any provision of the Landmark Policy is ambiguous. The Landmark Policy clearly and unambiguously provides that Landmark's liability attaches "only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full of amount of their respective net loss liability as set forth in Item 6 of the Schedule and designated 'Primary and Underlying Excess Limit(s)…" The Primary and Underlying Excess Limits are accurately listed as "$50,000,000 per occurrence." Accordingly, pursuant to the plain language of the Landmark Policy, unless and until Arch exhausts its $25,000,000 in policy limits for a total of "$50,000,000" in "Primary Limits and Underlying Excess Limits," the Landmark Policy is not triggered.

79.    Landmark denies the allegations in Paragraph 79 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

80.    Landmark denies the allegations in Paragraph 80 of the Petition. Landmark specifically denies that it breached, or anticipatorily breached, the Landmark Policy because the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

81.    Landmark denies the allegations in Paragraph 81 of the Petition. Landmark again specifically denies that it breached, or anticipatorily breached, the Landmark Policy because the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

82.    Landmark denies the allegations in Paragraph 80 of the Petition because it has not breached the Landmark Policy. The Landmark Policy has not been triggered.

## C. Count Three – Declaratory Judgment.

83.     In response to Paragraph 83 of the Petition, Landmark re-alleges and incorporates by reference its responses above.

84.     Landmark admits the Landmark Policy attaches "only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full of amount of their respective net loss liability as set forth in Item 6 of the Schedule and designated 'Primary and Underlying Excess Limit(s)…" The Primary and Underlying Excess Limits are accurately listed as "$50,000,000 per occurrence." Accordingly, pursuant to the plain language of the Landmark Policy, unless and until Arch exhausts its $25,000,000 in policy limits for a total of "$50,000,000" in "Primary Limits and Underlying Excess Limits," the Landmark Policy is not triggered. Landmark denies the remaining allegations in Paragraph 84 of the Petition.

85.     Landmark denies the allegations in Paragraph 85 of the Petition. The Landmark Policy clearly and unambiguously provides that Landmark's liability attaches "only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full of amount of their respective net loss liability as set forth in Item 6 of the Schedule and designated 'Primary and Underlying Excess Limit(s)…" The Primary and Underlying Excess Limits are accurately listed as "$50,000,000 per occurrence." Accordingly, pursuant to the plain language of the Landmark Policy, unless and until Arch exhausts its $25,000,000 in policy limits for a total of "$50,000,000" in "Primary Limits and Underlying Excess Limits," the Landmark Policy is not triggered.

86.     Paragraph 86 of the Petition calls for legal conclusions such that Landmark need not respond. To the extent further response is necessary, Landmark denies the allegations in Paragraph 86 of the Petition.

87.     Paragraph 87 of the Petition calls for legal conclusions such that Landmark need not respond. To the extent further response is necessary, Landmark denies the allegations in Paragraph 87 of the Petition.

88.     Paragraph 88 of the Petition calls for legal conclusions such that Landmark need not respond. To the extent further response is necessary, Landmark denies the allegations in Paragraph 88 of the Petition.

**D.  Count Four – Attorney's Fees.**

89.     In response to Paragraph 89 of the Petition, Landmark re-alleges and incorporates by reference its responses above.

90.     In response to Paragraph 90 of the Petition, Landmark denies the allegations concerning any alleged breach or anticipatory breach by Landmark. Landmark lacks sufficient information to admit or deny the remaining allegations in Paragraph 89 of the Petition.

91.     Landmark denies the allegations in Paragraph 91 of the Petition.

**E.  Count Five – Violations of Chapter 541 of the Texas Insurance Code.**

92.     In response to Paragraph 92 of the Petition, Landmark re-alleges and incorporates by reference its responses above.

93.     Landmark denies the allegations in Paragraph 93 of the Petition.

94.     Landmark denies the allegations in Paragraph 94 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

95.     Landmark denies the allegations in Paragraph 95 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

96.     Landmark denies the allegations in Paragraph 96 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

97.     Landmark denies the allegations in Paragraph 97 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

98.     Landmark denies the allegations in Paragraph 98 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

99.     Landmark denies the allegations in Paragraph 99 of the Petition.

100.     Landmark denies the allegations in Paragraph 100 of the Petition.

**F.  Count Six – Violations of Chapter 542A of the Texas Insurance Code.**

101.      In response to Paragraph 101 of the Petition, Landmark re-alleges and incorporates by reference its responses above.

102.     In response to Paragraph 102 of the Petition, Landmark admits that, if Plaintiff had a proper claim against Landmark, it would be a "first-party" insurance claim, but Landmark specifically denies that Plaintiff's causes of action against Landmark are proper because the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

103.     Landmark denies the allegations in Paragraph 103 of the Petition.

104.    Landmark denies the allegations in Paragraph 104 of the Petition.

105.    Landmark denies the allegations in Paragraph 105 of the Petition. Landmark further asserts the Landmark Policy has not been triggered, as Plaintiff undisputably has not fully exhausted the "$50,000,000" in "Primary Limits and Underlying Excess Limits."

106.    Landmark denies the allegations in Paragraph 106 of the Petition.

## VI.    JURY DEMAND

107.    Landmark asserts Plaintiff's statement in paragraph 107 does not require a response. Plaintiff made a jury demand prior to Arch removing this lawsuit. FED. R. CIV. P. 81(c)(3). To the extent that further response is required, Landmark asserts this case has been properly removed to the Northern District of Texas, Dallas Division, which is the district and division encompassing Dallas County, Texas.

## VII.    GENERAL DENIAL

1.    To the extent Landmark does not generally deny or admit the allegations as noted above, Landmark generally denies all allegations. FED. R. CIV. P. 8(b)(3).

2.    Additionally, Landmark generally denies all allegations stated in Plaintiff's Prayer including the relief requested.

## VIII.    CONDITIONS PRECEDENT

3.    Plaintiff has failed to comply with conditions precedent under its alleged causes of action and to coverage under the Landmark Policy. Such failure includes, but it not limited to, the undisputed fact that Plaintiff has not fully exhausted the policy limits of the first-layer excess Arch Policy. The Landmark Policy specifically provides that Landmark's liability attaches "only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full of amount

of their respective net loss liability as set forth in Item 6 of the Schedule and designated 'Primary and Underlying Excess Limit(s)…" The Primary and Underlying Excess Limits are accurately listed as "$50,000,000 per occurrence." Accordingly, unless and until Arch exhausts its $25,000,000 in policy limits for a total of "$50,000,000" in "Primary Limits and Underlying Excess Limits," the Landmark Policy is not triggered and Plaintiff has not satisfied its conditions precedent under its causes of action asserted in the Petition.

4.      Landmark specifically denies Plaintiff has satisfied all conditions precedent under its alleged causes of action because Plaintiff has not actually sustained or incurred damages in excess of $50,000,000.

5.      Landmark specifically denies that Plaintiff has made a claim under the Landmark Policy.

6.      Landmark specifically denies that Plaintiff provided proper notice of its claims against Landmark as required by Sections 541.1454 and 542A.003 of the Texas Insurance Code.

## IX.      AFFIRMATIVE DEFENSES

7.      Without waiver of the foregoing, Landmark asserts the following conjunctive and/or alternative specific denials, alternative defenses, and affirmative defenses:

8.      Plaintiff's damages, if any, are the result of acts or omissions, fault, negligence, intentional conduct, breach of contract, violation of statute, or breach of duty, by or of persons, entities, or parties over whom Landmark had no control and for whom Landmark has no legal responsibility. Such acts or omissions were the sole cause, sole proximate cause, producing cause, or a new and independent intervening or superseding cause of the alleged injuries to Plaintiff.

9.      Plaintiff's damages, if any, are the result, in whole or in part, of Plaintiff's own fault, acts or omissions, negligence, intentional conduct, breach of duty, violation of statute, or breach of contract, or that of its agents or representatives or employees.

10.     Landmark pleads the doctrine of comparative good faith and fair dealing as an equitable factor in adjudging the relative positions of the parties in this case.

11.     Landmark denies it violated the Texas Insurance Code.

12.     Landmark denies it breached the Landmark Policy.

13.     Landmark denies it anticipatorily breached the Landmark Policy by denying any Hurricane Ida claim brought by Plaintiff.

14.     Landmark denies that it violated any other statute or law, denies liability to Plaintiff under any theory, and denies liability to Plaintiff for damages or other relief.

15.     Plaintiff's Second Amended Petition fails to assert a cause of action upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), and Landmark specifically preserves this defense.

16.     Plaintiff's claim for declaratory judgment is duplicative of Plaintiff's contract claim.

17.     Plaintiff's claims and the damages it seeks are barred because granting Plaintiff the relief it requests would result in unjust enrichment.

18.     Plaintiff failed to mitigate its damages, if any.

19.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

20.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

21.     Plaintiff should be estopped from asserting claims against Landmark by virtue of Plaintiff's own conduct or that of its agent.

18

22.    Landmark invokes its rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and affirmatively pleads that Plaintiff's pleading for punitive damages or exemplary damages is violative of the Fourteenth Amendment. Further, Landmark affirmatively pleads that the assessment and award of punitive damages is violative of the Eighth Amendment of the United States Constitution as it is applied to the States through the Fourteenth Amendment of the United States Constitution, in that such awards potentially constitute an excessive fine imposed without the protections of fundamental due process. Accordingly, Landmark invokes its rights under the Eighth and Fourteenth Amendments and respectfully requests that this Court disallow any award of punitive damages in as much as an award in this case would be violative of Landmark's constitutional rights. Landmark further invokes its rights under the Fifth Amendment, as applied through the Fourteenth Amendment to the United States Constitution, which it reads in part, "No person shall be . . . deprived of . . . property without due process of law. . . ."

23.    Landmark specifically pleads that any award of punitive damages must be supported by clear and convincing evidence. Further, Landmark specifically pleads that if any exemplary damages are awarded, said damages are subject to the statutory limit set forth in the Texas Civil Practice and Remedies Code § 41.001, *et. seq.*, other applicable statutory authority, and common law.

24.    Plaintiff is not entitled to attorneys' fees, if any, because it has asserted an excessive "demand."  Plaintiff has acted unreasonably in demanding monies to which it is not entitled, thereby also rendering its "demand" unreasonable and excessive.

25.    If Plaintiff has suffered any uncompensated damages or loss, which is denied, Plaintiff failed to mitigate such damages.

19

26.     In the event Plaintiff has any damages, which is expressly denied, Plaintiff has the burden of allocating between covered and uncovered damages. Texas recognizes the insured may only recover for damage caused by covered perils during the Policy period, and the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses. The burden of allocation is on the insured, even if the allocation is between covered perils and excluded perils.

27.     Under the doctrine of concurrent causation, Landmark does not owe coverage for damage caused by non-covered perils. Texas recognizes the doctrine of concurrent causes, so that when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damages caused solely by the covered peril(s). Because the insured may only recover for damage caused by covered perils during the Policy period, the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses. The burden of allocation is on the insured, even if the allocation is between covered perils and excluded perils.

28.     Plaintiff's extra-contractual claims are barred, including, but not limited to, Plaintiff's Texas Insurance Code claims, because a bona fide controversy existed and continues to exist concerning Plaintiff's entitlement, if any, to any insurance benefits from Landmark. Landmark is permitted to evaluate the applicability of coverage and/or value claims differently from its insureds and others without facing extra-contractual liability. Landmark's conduct and determinations were reasonable based on results of the claim's investigation and the provisions of the Landmark Policy. Because a bona fide controversy existed and/or exists regarding coverage and/or the valuation of Plaintiff's insurance claim, liability under the Landmark Policy has not been reasonably clear at any time, and any and all extra-contractual claims are barred.

20

29.    Plaintiff's extra-contractual claims are barred because its contract claim is barred.

30.    Plaintiff's extra-contractual claims are also barred because Plaintiff has no injury other than its alleged loss of policy proceeds.

31.    Plaintiff's extra-contractual claims are also barred because Plaintiff failed to state a claim upon which relief can be granted with regard to Plaintiff's extra-contractual claims. Specifically, Plaintiff failed to describe particular facts or circumstances that transform alleged contractual claims into a cause of action for alleged violations of the Texas Insurance Code. Plaintiff failed to allege any specific conduct on the part of Landmark which would subject Landmark to liability under Chapters 541 and 542 of the Texas Insurance Code. Further, Landmark did not, knowingly or otherwise, make any false or negligent misrepresentations to Plaintiff.

32.    Plaintiff's claims are barred or limited by the terms, conditions, definitions, exclusions, limitations, and other provisions in the subject Landmark Policy, and any other policy issued to Plaintiff by Landmark, and Landmark, therefore, incorporates by reference the entirety of the Landmark Policy as well as the CNA policy to which Landmark follows form, and to the extent necessary, asserts affirmatively every term, condition, definition, exclusion, limitation, and every other provision, including, but not limited to the limit of insurance, deductible, and policy period, which is attached here as **Exhibits A and B** and is fully incorporated here. Landmark also expressly notes the following provisions:

*This Endorsement Changes The Policy. Please Read It Carefully.*

**EXCESS PHYSICAL DAMAGE SCHEDULE**

\*\*\*

3.    Perils Covered:        Windstorm or Hail associated with a Named Storm

Excluding Terrorism

21

4.      Property Covered:      Building

Personal Property

Business Income with Extra Expense other than "Rental Value"

Commercial Fine Arts

5.      Primary Insurers and Policy Numbers:   Continental Casualty Company
                                                                          Policy No. RMP 6023381009

6.      Primary Limits and Underlying Excess Limits:    $50,000,000 per occurrence

7.      Limit Insured:   $27,000,000 per occurrence, subject to conditions of the
                              Scheduled Limit of Liability

*** 

**EXCESS PHYSICAL DAMAGE COVERAGE FORM**

**Notwithstanding any provision(s) contained within the primary or underlying policies to the contrary, this policy is amended as follows:**

**1.      INSURING CLAUSE:**

Subject to the limitations, terms and conditions contained in this Policy or added hereto, the Company agrees to indemnify the Insured named in the Excess Physical Damage Schedule ("Schedule") herein in respect of direct physical **loss** or damage to the property described in the Schedule while located or contained as described in the Schedule, occurring during the period stated in the Schedule and caused by any of such perils as are set forth in Item 3 of the Schedule, and which are also covered by and defined in the policy(ies) specified in the Schedule and issued by the "Primary Insurer(s)" stated therein.

**2.      LIMIT:**

Provided always that liability attaches to the Company only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full amount of their respective **ultimate net**

**loss** liability as set forth in Item 6 of the Schedule and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Company's liability shall be those set forth in Item 7 of the Schedule under the designation "Limit Insured" and the Company shall be liable to pay the **ultimate net loss** up to the full amount of such "Limit Insured."

The maximum recovery in any one occurrence for any coverage(s) or peril(s) subject to a sublimit shall be that sublimit provided by the primary and/or underlying excess policy(ies) and in no event shall the Company be liable for any amounts over the sublimit contained within the primary and/or underlying excess policy(ies) for the coverage(s) or peril(s) to which that sublimit applies.

In the event that any perils against which this Policy insures are subject to an aggregate limit in the primary and/or underlying excess policy(ies), liability attaches to the Company only in the event that:

(a)    The **Ultimate Net Loss** exceeds the "Primary and Underlying Excess Limit(s)" as a result of **loss** or damage arising out of a single occurrence; or

(b)    Item 6 of the Schedule specifies that the "Primary and Underlying Excess Limit(s)" apply on an aggregate basis for the peril which caused the loss or damage.

***

4.    **PRIORITY OF PAYMENTS / APPLICATION OF RECOVERIES:**

There is no recovery under this excess policy as respects the coverage(s) or peril(s) which are sublimited within the primary and/or underlying excess policies to amounts less than or equal to the amount set forth in Item 6 of the Schedule, nor for those coverages excluded in this excess policy; however, the Company recognizes that the primary and underlying excess policy limits can be eroded or exhausted, wholly or partially, by application of said sublimits.

All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company; provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's **ultimate net loss** has been fully ascertained.

***

23

**6.    MAINTENANCE OF PRIMARY INSURANCE:**

In respect of the perils hereby insured against, this Policy follows the form of and is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy(ies) of the primary insurer(s) prior to the happening of a loss for which claim is made hereunder, and should any alteration be made in the premium for the policy(ies) of the primary insurer(s), then the premium hereon shall be adjusted accordingly.

It is a condition of this Policy that the policy(ies) of the primary insurer(s) and underlying excess insurer(s) shall be maintained in full effect during the currency of this Policy except for any reduction or exhaustion of the aggregate limits contained therein solely by payment of losses during the Policy year.

***

**8.    NOTIFICATION OF CLAIMS:**

The Insured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give immediate written notice thereof to the person(s) or firm named for the purpose in the schedule.

***

**DECLARATIONS**

***

**E.    DEDUCTIBLES**

The Insurer shall be liable for each loss separately occurring or for each loss separately occurring or for the sum of all losses arising from the same "occurrence" excess of **USD100,000**, except excess of:

| With respect to any "Named Storm" at "locations" within "Tier 1 Zones," except Florida and Harris County, Texas applied separately at each "location" for which a claim is made, the Deductible shall be: | Separately:<br><br>Three percent (3%) of the actual value of the "unit of insurance" *at the time of loss* for which the Insured is making a claim against this policy. The deductible shall apply separately to each "unit of insurance" *for all locations involved in the loss or damage* and will be subject to a minimum deductible of USD500,000 per Occurrence. |
|---|---|

24

III.    **PROPERTY INSURED**

Except as hereinafter excluded, this Policy insures:

\*\*\*

B.    **EXTENSIONS**

This policy also insures:

\*\*\*

11.    **DEMOLITION AND INCREASED COST OF CONSTRUCTION**

If, as a result of direct physical loss, damage or destruction by a peril insured by this Policy reconstruction, restoration, repair or use of property insured is regulated or prohibited by the enforcement of any law, ordinance, regulation or governmental directive which is in force at the time of the direct physical loss, damage or destruction, this Policy shall pay for:

a.   The cost of demolition and clearing the site of loss of both the damaged and the undamaged property; and

b.   The costs to (re)construct, restore, or repair such property as may be required to bring both the damaged and the undamaged property into full compliance with any applicable law, ordinance, regulation or governmental directive;

The Insured has the option to rebuild or reconstruct on the same or another site but recovery hereunder shall be limited to the cost to rebuild or reconstruct on the original site.


However, if the Insured elects not to rebuild, this Policy shall pay for the cost of demolition and clearing the site of loss of both the damaged and the undamaged property; and the "actual cash value" of both the damaged and the undamaged property.

Notwithstanding the foregoing, this Policy does not insure such costs when necessitated by the enforcement of any law or ordinance regulating asbestos material that has not sustained direct physical loss, damage or destruction by a peril insured by this Policy or by any governmental direction or request declaring that asbestos material present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for

which it was intended or installed and must be removed or modified.

\*\*\*

17.    **PRESERVATION OF PROPERTY**

In case of actual or imminent direct physical loss, damage or destruction by a peril insured by this Policy, the expenses incurred by the Insured in taking actions for the temporary protection and preservation of property insured by this Policy shall be added to the total direct physical loss, damage or destruction, if any, otherwise recoverable under the Policy and be subject to the applicable Deductible and without increase in the Policy Limits of Liability.

\*\*\*

19.    **SERVICE INTERRUPTION PROPERTY DAMAGE**

This policy covers insured property resulting from direct physical loss, damage or destruction, by a peril insured by this Policy, of property of a supplier of fuel, electricity, steam, water, gas, refrigeration, sewerage or telecommunications, including poles, towers, and transmission or distribution lines within 1,000 feet of the Insured's premises.

\*\*\*

V.    **TIME ELEMENT**

**A. BUSINESS INTERRUPTION**

1.  This Policy insures loss resulting from the necessary interruption or reduction of business operations conducted by the Insured and caused by direct physical loss, damage or destruction, of the property of the type insured hereunder, by a peril insured by this Policy.

2.  If such a loss occurs during the term of this Policy, it shall be adjusted on the basis of the 'Actual Loss Sustained' by the Insured during the Period of Recovery resulting from the interruption or reduction of operations. 'Actual Loss Sustained' is defined as the reduction in 'Gross Earnings' less charges and expenses that do not necessarily continue during the interruption or reduction of the business operations.

    For manufacturing operations, 'Gross Earnings' are defined as the sum of:

a. The total "net sales value of production,"

b. The total net sales of "merchandise," and

c. Other earnings derived from the business.

LESS THE COST OF:

d. "'Raw stock" from which such production is derived,

e. Supplies consumed in the conversion of such "raw stock" into "finished stock" or in supplying the services sold by the Insured,

f. "Merchandise" sold including packaging materials, and

g. Services purchased from outsiders for resale, which do not continue under contract.

No other costs shall be deducted in determining 'Gross Earnings' for manufacturers.

For non-manufacturing operations, 'Gross Earnings' are defined as the sum of:

a. Total net sales, and

b. Other earnings derived from the operations of the business.

LESS THE COST OF:

c. "Merchandise sold,

d. Materials and supplies consumed, and

e. Services purchased from outsiders for resale which do not continue under contract.

f. No other costs shall be deducted in determining 'Gross Earnings' for non-manufacturing business.

3. In the event of direct physical loss, damage or destruction of property insured by a peril insured by this Policy which results in an interruption in research and development activities that in themselves would not have produced income during the Period of Recovery, this Policy insures the actual loss sustained of the continuing fixed charges and expenses, including payroll, attributable to such research and development activities, known as

'Research and Development "Time Element."

4. Resumption of Operations: If it is reasonably possible for the Insured to reduce the loss resulting from the interruption or reduction of operations,

   a. By a complete or partial resumption of operations or

   b. By making use of available "finished stock" or "merchandise,"

      Such reduction shall be taken into account in arriving at the amount of loss hereunder.

5. 'Business interruption' does not insure any loss resulting from loss, damage or destruction of "finished stock" for which the Insured will otherwise recover under this policy at the Insured's regular cash selling price.

## B.  BUSINESS INTERRUPTION

### This Policy insures:

1. 'Extra expense' incurred by the Insured resulting from direct physical loss, damage or destruction of property insured by a peril insured by this Policy.

2. 'Extra expense' means the reasonable and necessary extra costs incurred by the Insured during the Period of Recovery to temporarily continue as nearly normal as practicable the conduct of the Insured's business and extra costs of temporarily using property of the Insured or others less any value remaining at the end of the Period of Recovery for property obtained in connection with an 'extra expense' loss.         ***

## H.     PROVISIONS APPLICABLE TO "TIME ELEMENT"

### 1.  The Period of  Recovery

   a. Applicable to "Time Element" as defined in 'Business Interruption,' 'Extra Expense,' 'Rental Value' and 'Soft Costs'
      above:

      i.   Shall not exceed such length of time required with the exercise of due diligence and dispatch to rebuild, repair, or replace lost, damaged or destroyed property and to make such property ready for operations under the same or

28

equivalent physical and operating conditions that existed prior to the loss, including such additional time as may be required to obtain "Green" Certification, and including such time as may be required to restore or recreate lost or destroyed valuable papers and records, electronic media and electronic data.

ii.    Shall include an additional length of time, known as an 'Extended Period of Recovery,' not to exceed the time specified in the DECLARATIONS, to restore the Insured's business to the condition that would have existed had no "Time Element" loss occurred.

\*\*\*

**8.  Law, Ordinance, Regulation or Governmental Directive**

In the event reconstruction, restoration, repair or use of property insured is regulated or prohibited by the enforcement of any law, ordinance, regulation or governmental directive that is in force at the time of direct physical loss, damage or destruction by a peril insured by this Policy, this Policy shall pay for any increase in "Time Element" loss insured by this Policy arising out of the additional time required to bring both the damaged and undamaged property into full compliance with the law, ordinance, regulation or governmental directive.

Notwithstanding the foregoing, this Policy does not insure any increase in "Time Element" loss insured by this Policy arising out of the additional time required by the enforcement of any law, ordinance or regulation regulating asbestos material that has not sustained direct physical loss, damage or destruction by a Listed Peril as defined in Asbestos Material in EXCLUSIONS, or by any governmental direction or request declaring that asbestos material present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

\*\*\*

**VI.    EXCLUSIONS**

This Policy does not insure:

\*\*\*

29

E.    **FAULTY WORKMANSHIP, MATERIAL, CONSTRUCTION OR DESIGN**

The cost of making good or rectifying faulty or defective workmanship, material, construction or design, but this exclusion shall not apply to damage resulting from such faulty or defective workmanship.

This exclusion shall not apply to "Boiler and Machinery" as defined in the DEFINITIONS.

F.    **DETERIORATION, DEPLETION, RUST, ETC.**

Direct physical loss, damage or destruction caused by normal:

1.  deterioration
2.  depletion
3.  rust
4.  corrosion or erosion
5.  wear and tear
6.  inherent vice or latent defect

unless such direct physical loss, damage or destruction results directly from a peril insured by this policy or unless direct physical loss, damage or destruction not excluded by this policy results from one of the above causes, then only that resulting direct physical loss, damage or destruction is insured.

This exclusion shall not apply to "Boiler and Machinery" as defined in the DEFINITIONS.

***

K.    **MOLD, MILDEW OR FUNGUS**

1.  Except as set forth in paragraph VI.K.2. below, this Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew or fungus

This exclusion applies regardless whether there is (a) any direct physical loss, damage or destruction of property insured; (b) any insured peril or cause, whether or not contributing concurrently or in any sequence; (c) any loss of use, occupancy, or functionality; or (d) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

30

*The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s),mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;*

a) *fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyl, and including mold(s), rusts, mildews, smuts and mushrooms;*

b) *mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);*

c) *spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,*

*However, this exclusion shall not apply when the loss or damage is directly caused by a Covered Peril under the Policy and provided that such loss or damage is reported to the company within 12 months from the expiration date of the policy.*

\*\*\*

## VII.    VALUATION

The value of property shall be determined as follows:

### A.   REPLACEMENT COST

With respect to all property insured (unless specifically addressed elsewhere in the Policy), the payment for loss shall be on a 'replacement cost' basis. 'Replacement Cost' includes all fees, costs, charges and expenses, (including, those of architects, surveyors, lawyers, engineers and consulting engineers) incurred by or on behalf of the Insured to reassemble, rebuild, reclaim, reconstruct, repair, replace, or restore property insured with due diligence and dispatch with new property or materials, either at the site of the loss or, at the sole option of the Insured, another site. In the event the Insured decides to rebuild on another site, the liability of the Insurer shall not exceed the cost and expenses which would have been incurred to reassemble, rebuild, reclaim, reconstruct, repair, replace or restore the property lost, damaged or destroyed at the site of the loss.

In the event the Insured decides not to reassemble, rebuild, reclaim, reconstruct, repair, replace or restore the property lost, damaged or destroyed, the liability of the Insurer shall not exceed the cost and expenses which would have been incurred to reassemble, rebuild,

reclaim, reconstruct, repair, replace or restore the property lost, damaged or destroyed at the site of the loss provided the proceeds of such loss settlement are expended in any other capital expenditures related to the Insured's operations.

If the insured elects not to reassemble, rebuild, reclaim, reconstruct, repair, replace or restore the property, lost, damaged or destroyed, or expend the loss settlement in other capital expenditures, the payment for loss shall be on an "Actual Cash Value" basis.

\*\*\*

## VIII.    GENERAL CONDITIONS

\*\*\*

### C.    ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Insurer and, upon the Insurer's request and expense, shall submit to examination under oath, attend hearings and trials and assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

\*\*\*

### G.    CONTROL OF PROPERTY

This insurance shall not be prejudiced by any act or neglect of the owner of any building if the Insured is not the owner thereof, or by any act or neglect of any occupant (other than the Insured) of any building, when such act or neglect of the owner or occupant is not within the control of the Insured, or by failure of the Insured to comply with any warranty or conditions contained in this Policy of any form or endorsement attached to this Policy with regard to any portion of the premises over which the Insured has no control.

\*\*\*

### M.    PAYMENT OF LOSS

1.    All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proof of loss by the Insurer or its appointed representative.

2.    Pending final adjustment of an insured loss, the Insured may collect partial payments by filing a proof of loss for each partial payment.

32

3.    The full amount of the 'actual cash value' shall be due and payable no later than 30 days after presentation and acceptance of a proof of loss for the 'actual cash value.' Collecting the 'actual cash value' portion of any claim shall not affect the rights of the Insured under this Policy to collect amounts in excess of the 'actual cash value' upon presentation and acceptance of proof of loss

**N.    PROOF OF LOSS**

The Insured shall render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place and time of the loss, damage or destruction; the interest of the Insured and all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

\*\*\*

**P.    RIGHT TO INSPECT**

The Insurer, at all reasonable times, is permitted, but does not have any duty, to inspect property insured.

The Insurer's

1.    Right to make inspections;

2.    Making of inspections; or

3.    Analysis, advice or inspection report

shall not constitute an undertaking, on behalf of or for the benefit of the Insured or others to determine or warrant that the property insured is safe or healthful. The Insurer shall have no liability to the Insured or any other person because of any inspection or failure to inspect.

\*\*\*

**T.    SUIT AGAINST THE INSURER**

No suit or action on the Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured has fully complied with all the requirements of this Policy. The Insurer agrees that any action or proceeding against it for recovery of any loss under this Policy shall not be barred if commenced within the longer of three years or the time prescribed in the statutes of the applicable jurisdiction.

33

***

## IX.   DEFINITIONS

### A.  ACTUAL CASH VALUE

The 'replacement cost' (as defined in VALUATION), less a reasonable allowance for physical deterioration.

***

*This Endorsement Changes The Policy. Please Read It Carefully.*

## EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS

This endorsement modifies insurance provided under the following:

## ALL COVERAGE PARTS

**A.**   The following Exclusion is added:

### EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria

We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But if "fungus", wet or dry rot or bacteria results in a "specified covered cause of loss", we will pay for the loss or damage caused by that "specified covered cause of loss".

This exclusion does not apply:

**1.**   When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.**   To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**B.**   The following Additional Coverage is added:

### ADDITIONAL COVERAGE - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria

**1.**   This limited coverage applies only when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means

34

were used to save and preserve the property from further damage at the time of and after that occurrence, and only if any loss resulting from the following is reported to us within 60 days of the occurrence.

    **a.**    A "specified covered cause of loss" other than fire or lightning; or

    **b.**    Flood, if the Flood Coverage Endorsement applies to the affected premises.

**2.**    Under conditions described in item **B.1.** above, we will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    **a.**    Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    **b.**    The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    **c.**    The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.**    The coverage provided under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**4.**    The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

***

**SCHEDULED LIMIT OF LIABILITY**

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE PARTS**

It is understood and agreed that the following special terms and conditions apply to this policy:

**1.** In the event of loss hereunder, liability of the Company shall be limited to the least of the following liability limitation measures in any one "occurrence":

   **a.** The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits; or

   **b.** 100% of the individually stated value for each scheduled item of coverage insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits; or

   **c.** The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy, if, after the application of the limits in **a.** or **b.** above to each scheduled item of coverage which had the loss, the total exceeds such Limit of Liability.

***

33.    Landmark further incorporates by reference the entirety of the subject policies issued to Plaintiff by the primary insurers (Allianz Global Risks US Insurance Company, Endurance American Specialty Insurance Company, Continental Casualty Company, Starr Surplus Lines Insurance Company, and Westchester Surplus Lines Insurance Company) as well as the first-layer excess insurer, Arch, to the extent applicable to Landmark.

34.    Landmark adopts all specific denials, alternative defenses, affirmative defenses, exclusions, and limitations asserted by Arch to the extent applicable to Landmark.

35.    Landmark reserves the right to assert additional defenses upon further particularization of Plaintiff's claims and/or further discovery concerning the nature of Plaintiff's claims at a future date in accordance with the Federal Rules of Civil Procedure.

## X.     RESERVATION OF RIGHTS

36.     Landmark asserts it does not intend to waive any of its rights under the Landmark Policy or applicable law by not listing a particular Policy term, provision, defense, condition, exclusion, and/or limitation here, and specifically reserves the right to amend its answer under the Federal Rules of Civil Procedure.

### REQUEST FOR RELIEF

Accordingly, Landmark requests the Court enter judgment in favor of Landmark and against Plaintiff on all claims and causes of actions; that Plaintiff take nothing in this case; that Landmark recover its costs and fees; and that Landmark be granted any other relief it is entitled.

Respectfully submitted,

**SHACKELFORD, MCKINLEY, & NORTON LLP**

By:  */s/ Bruce R. Wilkin*
    **Bruce R. Wilkin**
    Texas Bar No. 24053549
    bwilkin@shackelford.law
    **Marjorie C. Nicol**
    Texas Bar No. 00784684
    mnicol@shackelford.law
    **Connor E. Raborn**
    Texas Bar No. 24138239
    craborn@shackelford.law
    717 Texas Avenue, 27th Floor
    Houston, Texas 77002
    Telephone: 832.415.1801
    Facsimile: 832.565.9030

    **Tim E. Drake**
    Texas Bar No. 00789789
    tdrake@shackelford.law
    9201 N. Central Expressway, 4th Floor
    Dallas, Texas 75231
    Telephone: 214.906.3383
    Facsimile: 214.780.1401

    **ATTORNEYS FOR DEFENDANT LANDMARK AMERICAN INSURANCE COMPANY**

37

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the foregoing was filed with the Clerk of Court and served on all parties and counsel of record using the CM/ECF system on October 23, 2025.

*/s/ Bruce R. Wilkin* .
Bruce R. Wilkin